UNITED STATES DISTRICT COURT
DISTRICT OF DISTRICT OF MASSACHUSETTS (Eastern Division)

| | |
|---|---|
| **DIRECTV, Inc., a California corporation,** | Case No. **03cv12295 MLW** |
| **Plaintiff,** | |
| v. | **AMENDED COMPLAINT** |
| **JAY DESIMONE,** | |
| **Defendant** | |

Plaintiff, DIRECTV, Inc., through its attorneys, alleges as follows:

## PARTIES

1.   Plaintiff, DIRECTV, Inc. is a corporation duly incorporated under the laws of the State of California with its principal place of business at 2230 East Imperial Highway, El Segundo, California.  DIRECTV has significant interests in maintaining and securing the integrity of its satellite transmissions of television programming, and in prohibiting the unauthorized reception and use of the same.

2.   Defendant is currently a resident of this District in Revere, MA and/or he was a resident of this District when this cause of action arose.

## SUBJECT MATTER JURISDICTION

3.   This action arises under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605; and the Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521.

4.   This Court has original federal question jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331; the Communications Act of 1934, as amended, 47 U.S.C. § 605(e)(3)(a), and the Wiretap Act, 18 U.S.C. § 2520(a).

1

**VENUE**

5.      Venue is proper in this District under 28 U.S.C. § 1391(a) because the Defendant is subject to personal jurisdiction in this District by virtue of Defendant's residence in the District.  Additionally, venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claim occurred in this District.

**DIRECTV AND THE SATELLITE**

**TELEVISION BROADCASTING BUSINESS**

6.      Plaintiff, DIRECTV, a California company, operates the United States' premier digital satellite entertainment service, delivering over 225 channels of digital entertainment and informational programming to homes and businesses equipped with specialized digital satellite system equipment.  DIRECTV has invested billions of dollars to develop its direct broadcast satellite system.

7.      DIRECTV delivers television programming to 13 million subscribers in the United States.  In order to receive and view DIRECTV's satellite signal, each subscriber must be equipped with DIRECTV satellite system hardware, which consists of a satellite dish, a DIRECTV integrated receiver/decoder ("IRD") and a DIRECTV access card that is necessary to operate the IRD. Through this technology, DIRECTV offers programming including major cable networks, studio movies and special events offered on a pay-per-view basis, local network channels in select areas, and a variety of other sports and special interest programs and packages, some of which DIRECTV has the exclusive right to broadcast via satellite.

8. DIRECTV does sell and distribute DIRECTV satellite system hardware. DIRECTV sells programming, most of which it purchases from program providers such as cable networks, motion picture distributors, sports leagues, event promoters, and other programming copyright holders. DIRECTV contracts and pays for the right to distribute the programming to its subscribers, and holds exclusive satellite distribution rights in certain of the programming. DIRECTV also creates its own original content programming, for which DIRECTV owns the copyright.

9. DIRECTV provides different levels of programming to its customers based on the particular subscription package that DIRECTV subscribers purchase. DIRECTV encrypts its satellite transmissions and employs conditional access technology to prevent unauthorized access to its television programming by non-subscribers. The conditional access technology relies in part on DIRECTV "access cards" that are provided to consumers as components of the digital satellite system equipment and which, upon activation by DIRECTV, decrypt DIRECTV's programming and permit the consumer to access and view it. The software code contained in the access cards protects DIRECTV's programming against unauthorized access.

10. Upon activation of the access card by DIRECTV, the customer can receive and view in a decrypted format (*i.e.*, unscrambled) those channels to which the customer has subscribed or otherwise made arrangement to purchase from DIRECTV.

11. Consumers who have purchased DIRECTV satellite system equipment can subscribe to various packages of DIRECTV programming, for which the subscriber pays a periodic fee, usually monthly. Subscribers can also order pay-per-view events and

movies either by using an on-screen menu and a hand-held remote control device, or by calling DIRECTV and ordering the program over the telephone.

## DIRECTV'S SECURITY SYSTEM AND PIRACY

12.   All programming distributed by DIRECTV is delivered to one or both of DIRECTV's broadcast centers in Castle Rock, Colorado, and Los Angeles, California. At the broadcast centers, DIRECTV digitizes and compresses the programming, and encrypts the signal that is sent to its subscribers to prevent receipt of the programming without authorization.  DIRECTV then transmits the encrypted signal to multiple satellites located in orbit approximately 22,300 miles above the earth.

13.   The satellites relay the encrypted signal back to Earth, where it can be received by DIRECTV's subscribers equipped with DIRECTV satellite system hardware. The satellite receiving dishes can be mounted on a rooftop, windowsill or deck railing at the subscriber's home or business.  The signal is received by the dish and transmitted by wire to the IRD.  The IRD (boxes that are approximately the size of a VCR player) acts like a computer which processes the incoming signal using the credit card sized access card.

14.   When the customer subscribes to a package, DIRECTV electronically activates the subscriber's access card in accordance with that subscription.  The access card then acts as a reprogrammable microprocessor and uses "smart card" technology to (a) control which DIRECTV programming the subscriber is permitted to view, and (b) capture and transmit to DIRECTV the subscriber's impulse pay-per-view information.

15.   Because DIRECTV generates its revenues through sales of subscription packages, it must be able to condition access to programming on the purchase of

4

legitimate subscriptions. Accordingly, DIRECTV devotes substantial resources to the continued development and improvement of its conditional access system.

16.   DIRECTV's need to develop increasingly sophisticated security measures is driven by the actions of satellite television "pirates." Satellite pirates endeavor to circumvent DIRECTV's security measures to gain unlimited access to all DIRECTV programming, including pay-per-view events, without paying a fee. Because the access cards are part of the primary security mechanism relied on by DIRECTV, the modification of access cards using various hardware and software devices primarily designed and/or marketed to disable the access cards' security features (hereinafter referred to as "Pirate Access Devices") is the primary focus of satellite piracy.

17.   As part of its ongoing effort to prevent piracy, DIRECTV periodically updates its access cards to improve both functionality and security controls. DIRECTV's most recent generation of access cards are commonly referred to as "P4" and "D1" cards. Prior generations of access cards are commonly known as "H" or "P2" and "HU" or "P3" cards.

18.   As part of its efforts to combat piracy, DIRECTV periodically developed and administered electronic countermeasures, which are commonly referred to in the satellite piracy community as "ECMs." ECMs involve sending a stream of data that targets illegally modified access cards and disables those access cards.

19.   In response to DIRECTV's anti-piracy efforts, including DIRECTV's ECMs, satellite pirates have developed devices referred to as, among other things, bootloaders, dead processor boot boards, glitchers, HU loaders, emulators, and unloopers, that employ hardware and software in combination to restore pirate access cards' ability

5

to illegally circumvent DIRECTV's encryption protection and view DIRECTV programming.

20.     DIRECTV's ability to attract and retain subscriber revenues and goodwill, and distribution rights for copyrighted programming, is dependent upon maintaining and securing the integrity of its programming, technology and products, including the access cards and copyrighted programming, and in prohibiting unauthorized reception and use of its protected communications.

## ALLEGATIONS AS TO DEFENDANT

21.     On November 29, 2001, in the matter of DIRECTV v. Derek Trone, et al., Case No. SA CV-01-370-DOC (Anx) filed in the United States District Court, Central District of California; DIRECTV executed Writs of Seizure with the assistance of the United States Marshal Service at a residence in Westfield, Indiana.  Pursuant to a lawsuit against the distributor of pirate access devices, DIRECTV recovered certain shipping records related to DSS-Pro and Smartcard Solutions, internet-based companies which distributed and marketed pirate access devices.  Pursuant to the lawsuit, DIRECTV came into possession of a substantial body of sales records, shipping records, email communications, credit card receipts and other records.  Those records evidence the Defendant's purchase of an illegal Pirate Access Device.  In reliance upon those records and other information, and upon information and belief, DIRECTV sets forth the allegations in this Complaint.

22.     The above mentioned records indicate that:

   A.     DeSimone purchased a Pirate Access Device from the pirate device dealer as described below;

   B. DeSimone placed the order by using interstate or foreign wire facilities;

   C. DeSimone received the order via the United States Postal Service or commercial mail carriers; and

   D. The records specifically evidence that, on or about July, 6, 2001, DeSimone purchased one (1) Atomic Bootloader. The order was shipped to DeSimone's address in Revere, MA.

23. Upon information and belief, on or about the date referenced above, the Defendant actually did purchase and thereafter did receive that certain electronic device listed as one (1) Atomic Bootloader.

24. The Atomic Bootloader, from DSS-Pro, was primarily designed for the unauthorized interception of DIRECTV satellite transmissions.

25. Upon information and belief, DIRECTV alleges that Defendant has used illegally modified DIRECTV Access Cards and other devices that are designed to permit viewing of DIRECTV's television programming without authorization by or payment to DIRECTV.

26. Upon information and belief, at all times material hereto, Defendant possessed the requisite DIRECTV satellite system hardware ("DIRECTV Hardware"), including satellite dish, integrated receiver/decoder ("IRD"), and access card, and inference drawn from the purchase of the subject device, and pirate access devices required to illegally modify a DIRECTV access card, through which Defendant actually and intentionally intercepted DIRECTV's encrypted satellite transmissions of television programming without authorization or payment to DIRECTV in violation of 47 U.S.C. § 605 and 18

U.S.C. §§ 2510-2521.

27.     Defendant's actions violate the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605; and the Electronic Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521.  DIRECTV brings this action to restrain these illegal activities against it.

**COUNT I**
**UNAUTHORIZED RECEPTION OF SATELLITE SIGNALS**
**IN VIOLATION 47 U.S.C. § 605(a)**

28.     Plaintiff DIRECTV repeats and re-alleges the allegations in Paragraphs 1 through 27 as if set forth fully herein.

29.     Defendant has received DIRECTV's satellite transmissions of television programming without authorization, in violation of 47 U.S.C. § 605(a).

30.     Defendant's violations have injured DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information.

31.     Defendant knew or should have known that receiving DIRECTV's satellite transmissions of television programming without authorization by or payment to DIRECTV was and is illegal and prohibited.

**COUNT II**

**UNAUTHORIZED INTERCEPTION OF ELECTRONIC COMMUNICATIONS**
**IN VIOLATION OF 18 U.S.C. § 2511(1)**

32.     Plaintiff DIRECTV repeats and re-alleges the allegations in Paragraphs 1 through 31 as if set forth fully herein.

33.     Civil causes of action for violation(s) of 18 U.S.C. § 2511 are expressly authorized by 18 U.S.C. § 2520.

34.     By using Pirate Access Devices for purposes of decryption and viewing of DIRECTV's satellite transmissions of television programming, Defendant intentionally intercepted, DIRECTV's satellite transmission of television programming, in violation of 18 U.S.C. §2511(1)(a).

35.     Defendant's violations have injured DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information.

36.     Defendant knew, or should have known, that such interception of DIRECTV's satellite transmissions of television programming was illegal and prohibited.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff DIRECTV requests that this Court grant the following relief:

(1)     Find the Defendant's conduct in using Pirate Access Devices for the unauthorized interception of its signals violates 47 U.S.C. § 605(a), and 18 U.S.C. § 2511(1)(a);

(2)     In the event of a default, an award of statutory damages of up to $10,000 for each violation of 47 U.S.C. § 605(a), and a further award of DIRECTV's reasonable attorneys' fees and costs in the amount of $850;

(3) In the event of trial or summary judgment and, an award of either (a) statutory damages in accordance with 47 U.S.C. § 605(e)(3)(C)(i)(II) and 18 U.S.C. § 2520(c)(2) or (b) compensatory and punitive damages in accordance with 605(e)(3)(C)(i)(I), and 18 U.S.C. § 2520(c)(2); and DIRECTV's reasonable attorneys' fees and costs in accordance with 47 U.S.C. § 605(e)(3)(B)(iii) and 18 U.S.C. § 2520(b)(3).

(4) Such additional relief as the Court deems just and equitable.

| | |
|---|---|
| 10/5/04 | /s/ John M. McLaughlin |
| Date | John M. McLaughlin (BBO: 556328) |
| | **Green, Miles, Lipton & Fitz-Gibbon** |
| | 77 Pleasant Street |
| | P.O. Box 210 |
| | Northampton, MA 01061-0210 |
| | (413) 586-0865 |